UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BONNIE STEARNS-
GROSECLOSE,

    Plaintiff,

    v.

CHELAN COUNTY SHERIFF'S
DEPARTMENT, a division of
Chelan County, MIKE HARUM,
individually, GREG MEINZER,
individually and KENT SISSON,
individually,

    Defendants.

NO.  CV-04-0312-RHW

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

A bench trial was held in Spokane, Washington from February 6, 2006, to February 9, 2006.  Plaintiff was represented by Scott Kane and Carol Tippi Volyn. Defendants were represented by Stanley Bastian.  These findings constitute the Court's final findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

## PROCEDURAL HISTORY

Plaintiff originally filed suit in Chelan County Superior Court.  Defendant City of Chelan removed the case to federal court on August 20, 2004.  Jurisdiction is proper under 28 U.S.C. § 1331, because Plaintiff has stated a claim under 42 U.S.C. § 1983.  All parties filed motions for summary judgment in October 2005. By order on January 17, 2006, the Court granted the City of Chelan's summary judgment motion and dismissed it as a party.  The same order granted, in part, and denied, in part, the summary judgment motion filed by the Chelan County Sheriff's

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 1

1  Office ("CCSO") and the individual Defendants, finding a genuine issue of
2  material fact existed as to several of Plaintiff's claims.  The Court denied
3  Plaintiff's motion for summary judgment and her subsequent motion to reconsider.

4  ### FACTS

5  Plaintiff was employed as a police officer for the City of Chelan from
6  August 16, 1999, to February 29, 2004.  On December 15, 2003, the City and
7  CCSO entered into a Law Enforcement Service Agreement ("LESA") in which
8  CCSO agreed to provide law enforcement services within the City of Chelan.

9  The LESA includes several provisions material to this suit regarding the
10  transfer of authority and personnel from the City to CCSO.  The relevant
11  provisions are as follows:

12  2.4 [Law Enforcement Services] shall include a minimum of five
    (5) deputies and one (1) sergeant assigned and scheduled to the City of
13  Chelan. Said personnel will provide 24 hour patrol within the city 7 days
    a week.
14  . . .
    **ARTICLE IV**
15  4.1 Personnel:
    4.2 The rendition of such services, the standards of performance,
16  the discipline of officers, and other matters incident to the performance
    of such services and the control of personnel so employed shall remain
17  in the County.
    4.3 Pursuant to RCW 41.14.250, and as a direct consequence of
18  this agreement, city law enforcement employees who have met the
    minimum standards and qualifications of the Sheriff's office, and
19  successfully completed a background investigation, may transfer
    employment to the county. All persons employed in the performance of
20  such services and functions pursuant to this Agreement for said City
    shall be County employees and no City employee shall transfer
21  employment to the County, unless required pursuant to RCW 41.14.250.

22  (Ex. 18).  Pursuant to the LESA, on February 29, 2004, the City closed its Police
23  Department and laid off all city law enforcement employees.  On March 1, 2004,
24  CCSO assumed all law enforcement services.

25  Plaintiff, along with most of the other City of Chelan police officers, sought
26  to transfer her employment to CCSO before the dissolution of the Chelan Police
27  Department.  Sections 41.14.250 to 41.14.270 of the Revised Code of Washington
28  govern the transfer of police department employees when a city contracts to obtain

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 2

sheriff's office law enforcement services.  An employee applying for transfer qualifies under these state laws only if she meets the minimum standards and qualifications of the sheriff's office.  RCW § 41.14.250.  Rule 21 of the Chelan County Civil Service Commission Rules contains the minimum standards and qualifications for employment as a Chelan County Sheriff's Deputy.  Rule 21 states, in part, the following:

> **MINIMUM JOB REQUIREMENTS . . .**
> 1.   Graduation from standard high school, or GED, **PLUS** . . .
> 2.   Ability to read and write the English language.
> 3.   United States Citizen, good physical condition, and not less than 21 years of age at the time of employment.
> 4.   Possession of a valid Washington State driver's license by date of hire.
> 5.   Ability to pass entrance examination successfully.  Must meet minimum medical and health standards adopted by the Civil Service Commission.
> 6.   Applicant must have no felony convictions; *be able to successfully pass a background investigation*; and be able to obtain a concealed weapons permit.
> 7.   Once employed the applicant must successfully complete the Basic Law Enforcement Academy and successfully pass the Basic Law Enforcement physical agility admittance test.
> 8.   Once employed the applicant must meet all required certifications and maintain all other standards necessary for the performance of their job duties.

(Ex. 36) (emphasis added).

The term "background investigation" is not defined or further elaborated in the rules, but Exhibit 22 describes some background investigation guidelines available to CCSO detectives.  The guidelines state that the officer conducting the investigation should obtain references from the applicant's current and past employers and inquire of the applicant's family, friends, and associates as to her character and reputation.  (Ex. 22, at 1-2).  The stated objectives of the investigation are to allow the Sheriff and Undersheriff "to form a view of the applicant's qualifications, experience, honesty, dependability, integrity, morality, emotional stability, reputation, associations, prejudice and loyalty[;]" and to ensure the applicant has "good moral character."  (Id.).  Good moral character is defined as follows:

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 3

> A prospective employee of good moral character would possess attributes to enhance his or her job performance, including honesty, integrity, obedience to the oath of office and the code of ethics, respect for authority and respect for the rights of others. Good moral character is determined by a favorable report following the comprehensive background investigation.

(Id.).

Detective Mike Hartnett conducted a background investigation on Plaintiff after she applied to CCSO. Det. Hartnett's report includes a comparison of Plaintiff's applications to CCSO (she applied initially in March 1999 and again in December 2004) and an evaluation of her personnel file with the City Police Department. The report summarizes Det. Hartnett's interviews with most of Plaintiff's co-workers and supervisors and one private citizen. Det. Hartnett explained that he focused his interviews on her co-workers at the City because he believed their opinions of her abilities and working relationships were most relevant to her potential performance as a field deputy at CCSO. The report also includes the results of a polygraph test and Det. Hartnett's own evaluation of Plaintiff's fitness to be employed by CCSO. (Ex. 1).

The interview summaries in the background investigation report indicate that several of Plaintiff's co-workers thought she was weak at her patrol duties and officer safety, although quite a few stated that this may be due to lack of supervision and training. A few officers reported inappropriate incidents such as public intoxication and calling officers to serve as a "taxi service" for Plaintiff's intoxicated friends. Plaintiff's direct supervisor, Lt. Rhines, was asked for an interview but did not acknowledge or respond to Det. Hartnett's request to meet. Det. Hartnett's report of Chief Ed Bush's interview is the most negative among all the interview summaries. Chief Bush reportedly stated that Plaintiff "should be fired and not hired by [CCSO]." (Id.).

Plaintiff received several compliments during Det. Hartnett's interviews as well—Chelan Police Officer Joseph Waldon said she responds well to medical emergencies and has good contacts with the public; CCSO Deputy Doug Corulli

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 4

stated she has "good follow-up" and does well with detective work; and CCSO Deputy Bob Mckellar said he enjoys working with Plaintiff, she is thorough in her investigation techniques, and she is knowledgeable in the area of search warrants and check fraud cases. These positive comments were included in the background investigation report. (Ex. 1, at 4-6). Deputy Mckellar's interview was the only one that did not include any negative comments, however.

Aside from interview summaries, the report details other aspects of Plaintiff's career at the Chelan Police Department. Det. Hartnett reported that Plaintiff had used a City police car and her uniform without permission in a photograph she posted on an internet dating service in 2002. His review of Plaintiff's personnel file notes that her evaluations were "unremarkable with positive notations regarding her investigations of child abuse." The report considers her medical condition, stating that she received treatment for "acute stress disorder" in 2003 after a former colleague was killed on duty, but was released as "'fully recovered' with no restrictions as a police officer." (Id.). The report also mentions that Plaintiff has "other medical problems that are brought under control with medications and again offer no restrictions to her abilities as a police officer." (Id.).

Det. Hartnett's report goes into greater detail describing a disciplinary letter written by Corporal Saul Gallegos in 2002 that outlines deficiencies in Plaintiff's work habits and recommends corrective action. This letter is attached to the background investigation report. Deficiencies mentioned in the Gallegos letter include sleeping on duty, becoming intoxicated off-duty at local bars, and a general failure to be proactive on duty. Mr. Gallegos is now deceased, and no corrective action was recorded in Plaintiff's file. (Id.). An addendum to the report includes information and documents discovered after the initial report was complete. The addendum is comprised of an official citizen's complaint regarding Plaintiff and a response memorandum written by a reserve deputy who describes some

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 5

"questionable" behaviors on the part of Plaintiff.  (Ex. 37).

The overall impression from the background report, as reflected in Det. Hartnett's evaluation at its end, is negative.  Det. Hartnett recognized that most of the incidents complained of occurred during 2002, and he was unaware whether her behavior had changed since then.  Det. Hartnett wrote:

> Based upon the overwhelming negative input from her co-workers and other references (with one exception) I would recommend that if [Plaintiff] is considered for employment with this office she be enrolled in an intensive FTO [Field Training Officer] program . . . to include remedial training for basic police officer skills.  It should be noted that I did not respond to rumors, rather I only included first hand knowledge of Bonnie's behavior, conduct, and abilities.

(Ex. 1, at 8).

After reviewing Det. Hartnett's report, Sheriff Mike Harum, the appointing authority for CCSO, determined Plaintiff did not pass the background investigation and would not be offered a position.  Undersheriff Greg Meinzer informed her of this decision by letter dated January 16, 2004.  (Ex. 31).  Plaintiff received the letter on or about January 18, 2004, and a copy of the letter was delivered to the Chelan County Civil Service Commission.  (Id.).

Plaintiff presented testimony from Det. Hartnett and Eric Collier, another detective with CCSO, indicating that Mark Mann, the then-Chief Criminal Deputy with CCSO, made comments on at least two occasions implying that Ms. Stearns-Groseclose would not be hired by CCSO when the transfer of services occurred. During trial Mr. Mann did not recall making these statements.  Det. Hartnett testified that Mr. Mann's statements did not influence his compilation of the background investigation report, and that he did not have the impression that Mr. Mann was speaking in his official capacity or for Sheriff Harum.  Det. Collier testified that Mr. Mann said Plaintiff would not be hired because she failed her background investigation, even though the investigation had not yet been completed.  Collier had the impression that Mr. Mann made his statements with authority and conviction, as though it was a fact that Plaintiff would not be hired at

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 6

1   CCSO.  Mr. Mann was not involved in the decision whether to hire Plaintiff as a

2   CCSO deputy, and he in fact, left his position there in late December 2003, before

3   the background investigation was completed.

4        Plaintiff did not respond to the allegations contained in the background

5   investigation report.  However, the Civil Service Commission Rules for CCSO

6   include a procedure for an applicant to appeal a decision that she failed a

7   background investigation.  Rule 10.07 states that the name of any person on an

8   "eligibility list"—a list of the top candidates for a position, whether they are entry

9   level, lateral hires, or bilingual candidates—may be removed from the list if,

10  among other disqualifications, she "fails to successfully pass a background

11  investigation."  (Ex. 110, Rule 10.07).  According to Rule 11.05, a person who has

12  been removed from the eligibility list may be restored to her original position on

13  the list by the Civil Service Commission or the secretary-chief examiner "on

14  successful appeal by the appellant taken within ten business days after notice of the

15  decision[.]" (Id., Rule 11.05).  None of the Civil Service Rules directly addresses

16  or imposes special conditions on the procedure for transferring employees when a

17  city police department is absorbed by CCSO.

18       On March 3, 2004, an article appeared in the *Wenatchee World* in which it

19  was reported that

20           The Chelan County Sheriff's Office officially took over police
     duties this week for the city of Chelan, ending a nearly 50-year span of
21   city-run law enforcement.
             The county hired four former Chelan police officers, assigning
22   them to patrol the city.
             Two other Chelan police officers failed background checks
23   required for employment, said sheriff's office Sgt. Kent Sisson, who is
     in charge of the new Chelan detachment.  Sisson would not say why the
24   two officers, Kyle Watson and Bonnie Stearns, were not hired, other than
     to say that they did not meet the standards set by the sheriff's office.
25           Stearns said Tuesday that she has hired an attorney and plans to
     appeal the decision.  She said the sheriff's office has not yet fully
26   explained why she was not hired.
             Sisson said Watson has not appealed the decision and plans to
27   seek law enforcement employment elsewhere.  Watson couldn't be
     reached for comment.
28
    (Ex. 100).

    FINDINGS OF FACT AND CONCLUSIONS OF LAW * 7

Plaintiff also introduced testimony and evidence regarding Sheriff Harum's hiring practices as they relate to other women who have applied for a field deputy position with CCSO. Sheriff Harum has not hired any women as field deputies during his tenure as the appointing authority. Plaintiff presented circumstantial evidence that could indicate this dearth of female field deputies was the result of inappropriate hiring practices. However, Sheriff Harum also testified that, during his tenure, there were only four female applicants for field deputy positions and "99 percent of applicants are men."

### CONCLUSIONS

Plaintiff is alleging four separate claims against Sheriff Harum, Undersheriff Meinzer, Sgt. Kent Sisson, and CCSO. She claims Sheriff Harum violated 42 U.S.C. § 1983 by denying her due process rights when he decided she failed her background investigation. Plaintiff also claims that Defendants violated RCW §§ 41.14.250-41.14.270 by failing to transfer her from the City Police Department to CCSO. Her third claim for relief is that Defendants defamed her reputation through their comments in the article in the *Wenatchee World*. Lastly, Plaintiff alleges Defendants discriminated against her on the basis of gender in refusing to hire her.

### I.    Plaintiff's Due Process Claim under 42 U.S.C. § 1983

Plaintiff claims Sheriff Harum violated her due process rights under the Fifth and Fourteenth Amendments and is liable for damages.[1] Plaintiff raises constitutional claims under 42 U.S.C. § 1983 and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985). To establish liability under § 1983,

---

[1] Plaintiff's constitutional claim originally named the City of Chelan, CCSO and the other individual Defendants in addition to Sheriff Harum. However, the Court by order dismissed her § 1983 claims against the other Defendants, finding that the individual Defendants were protected by qualified immunity and the City of Chelan and CCSO were not liable as municipal entities. (Ct. Rec. 133).

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 8

Plaintiff bears the burden of proving that Sheriff Harum:  (1) acted under color of state law, and (2) deprived Plaintiff of rights secured by the Constitution or federal statutes.[2]  42 U.S.C. § 1983; *Martinez v. City of Oxnard*, 270 F.3d 852, 855 (9th Cir. 2001).  Here, Sheriff Harum was acting under color of state law when he decided Plaintiff did not pass her background investigation, so she has established the first element of her § 1983 claim.  Regarding the second element, Plaintiff alleges Sheriff Harum violated her due process rights by depriving her of both liberty and property interests without according her due process.

"A state cannot deprive a person of property without according her due process.  U.S. Const. amend. XIV.  A property entitlement, such as that of continued employment in a state job, is grounded in state law." *Rea v. Matteucci*, 121 F.3d 483, 484 (9th Cir. 1997) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)).  In *Stone v. Chelan County Sheriff's Department*, the Washington Supreme Court considered RCW §§ 41.14.250-41.14.270 and the rights those provisions give to employees seeking transfer to a county sheriff's office.[3]  The court found that

---

[2]  Section 1983 states in relevant part the following:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

[3]  The provisions relevant to this matter state the following:

**41.14.250.  City contracts to obtain sheriff's office law enforcement services—Transfer of police department employees**
When any city or town shall contract with the county sheriff's office to obtain law enforcement services to the city or town, any employee of the police department of such city or town who (1) was at the time such contract was entered into employed exclusively or principally in performing the powers, duties, and functions which are to be performed by the county sheriff's office under such contract (2) will,

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 9

> [t]he plain language of these statutes indicates city law enforcement employees do not have an unconditional right to transfer their employment, but must first meet the County's minimum employment standards and qualifications. The County therefore has the right to . . . refuse employment to those who may have met the City's standards, but do not meet the County's. To interpret the transfer statutes otherwise would render the third eligibility requirement in RCW 41.14.250 meaningless.

*Id.* at 810. Because those seeking transfer do not have an "absolute right to employment with the County," the court held that they are applying for employment and must meet any required employee qualifications. *Id.* at 811. Employees who are *eligible* to transfer under RCW § 41.14.250, *i.e.*, those who are employed by the city, will be terminated as a result of the contract, and meet the minimum standards and qualifications of the county sheriff's office, have a property right in their continued employment. *See* RCW § 41.14.260 (stating that "[a]n eligible employee may transfer . . . by filing a written request. . . . Upon receipt of such request by the civil service commission the transfer of employment shall be made."). Conversely, those employees who do not meet the minimum standards and qualifications of employment do not have a property right to continued employment.

Plaintiff did not meet the minimum standards and qualifications to become a

---

as a direct consequence of such contract, be separated from the employ of the city or town, and (3) meets the minimum standards and qualifications of the county sheriff's office, then such employee may transfer his employment to the county sheriff's office as provided for in RCW 41.14.260 and 41.14.270.

**41.14.260.  City contracts to obtain sheriff's office law enforcement services—Transfer of police department employees into county civil service for sheriff's office—Seniority for employment**

(1) An eligible employee may transfer into the county civil service system for the sheriff's office by filing a written request with the county civil service commission and by giving written notice thereof to the legislative authority of the city or town. Upon receipt of such request by the civil service commission the transfer of employment shall be made. . . . The sheriff may appoint the transferring employee to whatever duties he feels are in the best interest of the department and the individual.

RCW §§ 41.14.250 & 41.14.260.

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 10

CCSO field deputy due to Sheriff Harum's decision that she did not pass her background investigation.  Therefore, under state law, she did not have a property interest in continued employment.  However, Plaintiff charges that Sheriff Harum deprived her of due process by failing to give her an opportunity to challenge his decision.  Although it may be possible to end the inquiry into Plaintiff's due process rights here, the Court is hesitant to do so because of the mandatory nature of the statutes governing transfer of state employees and the subjective nature of the decision whether an applicant passes or fails a background investigation.  It is necessary to examine the process available to challenge the accuracy of Sheriff Harum's decision because this ultimately deprived Plaintiff of her protected property interest in continued employment.  However, Plaintiff's claim is still distinguishable from that raised in *Loudermill* and its progeny:  In *Loudermill*, the U.S. Supreme Court held that public employees with tenure were entitled to a pre-termination hearing.  470 U.S. at 538.  Here, Plaintiff was not tenured or employed with CCSO; instead, CCSO decided not to hire Plaintiff.  *See Stone*, 110 Wash.2d at 811 (holding that those applying to transfer to the county pursuant to RCW §§ 41.14.250-41.14.270 were "applying for employment").  Accordingly, Plaintiff was not necessarily entitled to a pre-termination hearing exactly as it is outlined in *Loudermill*, and the Court must determine "what process is due" considering the unique circumstances here.  *Loudermill*, 470 U.S. at 541.

Plaintiff also claims Sheriff Harum violated the Due Process Clause by depriving her of liberty interests without due process.  The Ninth Circuit has held:

> injury to reputation standing alone does not violate the Due Process Clause of the Fourteenth Amendment; one's "interest in reputation" standing along "is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."  Rather, due process protections apply only if a plaintiff is subjected to "'stigma plus'; i.e., if the state makes a charge against [a plaintiff] that might seriously damage his standing and associations in the community," and "1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law."

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 11

1 *Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002) (as amended on denial of

2 rehearing and rehearing *en banc*) (internal citations omitted).  As a law

3 enforcement officer, the charge that Plaintiff failed her background investigation

4 could seriously damage her standing and associations in the community.  The other

5 factors required to meet a "stigma plus" burden are also met here: Plaintiff contests

6 the accuracy of the charge that she failed her background investigation; there was

7 public disclosure that she failed in the *Wenatchee World*, and the disclosure of her

8 failure of the background investigation was made in connection with the denial of

9 an otherwise statutorily-mandated transfer.

10       "An essential principle of due process is that a deprivation of life, liberty, or

11 property be preceded by notice and opportunity for hearing appropriate to the

12 nature of the case."  *Loudermill*, 470 U.S. at 542 (internal quotation and citation

13 omitted).  In this case, Plaintiff received notice of Sheriff Harum's decision by

14 letter on January 18, 2004.  This notice included the reason for CCSO's denial of

15 employment.  *See* Ex. 31 ("Therefore, based on the results of the background

16 investigation, you will not be receiving an offer of employment from this

17 agency.").  According to the Civil Service Rules for CCSO, Plaintiff also had an

18 opportunity for a hearing within ten days after notice of the decision.  *See* Ex. 110,

19 Rule 11.05.  The question that remains is whether the process available and its

20 timing were constitutionally sufficient considering the nature of the deprivation.

21 *See Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 778 (9th Cir. 1982).

22       To answer this question, the Court must balance the competing interests at

23 stake: the private interest that will be affected, the governmental interest in hiring

24 qualified employees, and the risk of an erroneous deprivation of that interest.  *Id*. at

25 778-79; *see also Loudermill*, 470 U.S. at 542-43.  In this case, Plaintiff has a

26 substantial interest in the transfer of employment, although it is not as great as that

27 of a tenured employee.  *See Stone*, 110 Wash.2d at 811.  CCSO has a more

28 significant interest in hiring only those applicants whom it deems qualified for the

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 12

position of field deputy.  It appears the determinative factor is the risk of erroneous deprivation inherent in the background investigation procedure.

The background investigation procedure followed here was constitutionally adequate.  Although Plaintiff argues that the report portrays her in an unfairly negative light and that Det. Hartnett should have gone about the investigation in a different manner, the investigation and report were thorough and did not contain materially inaccurate information.  The background investigation, like a pre-termination hearing, provided "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Loudermill*, 470 U.S. at 545-46.  Additionally, the Civil Service Rules offered a procedure and opportunity to respond to any contested allegations in a background investigation report, thus further minimizing the risk of an erroneous deprivation of Plaintiff's rights.

After balancing the competing interests here, the Court concludes that Plaintiff received sufficient process: (1) she received written notice through a letter informing her that she failed her background investigation; and (2) she had the opportunity to appeal Sheriff Harum's decision to the Civil Service Commission or the secretary-examiner, thereby receiving both an explanation of the employer's evidence and an opportunity to present her side of the story.  Additionally, the letter informing her that she would not be offered a position at CCSO included an invitation to respond immediately and directly to Undersheriff Meinzer.  (Ex. 31) ("If you have any questions, please call me at . . . .").  This process satisfies the minimum due process requirements for a deprivation of Plaintiff's property and liberty interests.[4]

---

[4]  The *Loudermill* Court concluded that, where a *tenured* employee has a protected property interest in continued employment, he is "entitled to oral or

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 13

The Court declines to impose a requirement that all candidates who fail a background investigation must be informed explicitly of their right to appeal the decision and the applicable appeal period deadline, and instead finds the procedures outlined in the Civil Service Rules and their general availability to applicants adequate.  *See Payne v. Mount*, 41 Wash.App. 627, 635 (1985) (holding that "[a]lthough express notification of an appeal period deadline may be the preferred procedure, it is not required").  Plaintiff argues that her notice should have included at least a citation to the appeal procedures available to her, citing *McConnell v. City of Seattle*, 44 Wash.App. 316, 324-25 (1986).  However, in contrast to the claimant in *McConnell*, Plaintiff was an applicant for employment and not a tenured employee with CCSO.  Although the notice provided did not cite to the civil service rule that contains the time limit for appeal, it did meet minimum due process requirements for a transfer applicant considering the competing interests.  Sheriff Harum did not violate Plaintiff's due process rights when he decided she did not pass the background investigation or when this fact was related to the *Wenatchee World*.  Instead, Plaintiff failed to take advantage of the process that was available to her in order to challenge the validity of his decision.

## II.    Plaintiff's State Law Claims

Plaintiff's remaining state law claims all rest on the validity of Sheriff Harum's decision that Plaintiff failed the background investigation.  The background investigation report and its addendum are discrete documents.  (Exs.1 & 37).  At the beginning of trial, the Court questioned Plaintiff's counsel whether it was Plaintiff's contention that Det. Hartnett conspired with Sheriff Harum to

_____

written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  470 U.S. at 546.  A claimant with a protected liberty interest is similarly entitled to a hearing at which he can refute the charges against him and publicly clear his name.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 573 n.12 (1972).

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 14

make sure the report issued was such that Plaintiff would have failed it.  Counsel replied that this was not Plaintiff's contention.  Thus, the legitimacy of the report itself is not in question.  The Court also asked whether it was Plaintiff's contention that Sheriff Harum, upon reading Plaintiff's background investigation report, should have concluded that she passed the background test.  He replied that this was not necessarily Plaintiff's contention either.[5]  Rather, Plaintiff contended that the report was negligently compiled and not followed up appropriately, and that Sheriff Harum based his decision, at least partially, on gender bias.

As explained above, the overall tone of the report was overwhelmingly negative.  Plaintiff's personnel files were "unremarkable," but the interviews with her co-workers were generally negative in tone, particularly the interview with Chief Bush, who was Plaintiff's boss.  There were also several reports of questionable behavior for a law enforcement officer that would cause a reasonable sheriff concern over a potential employee's performance.  Going through the report, several negative reports and characteristics stand out: (1) Cpl. Gallegos' letter to Chief Bush describes quite a few bad work habits and other issues, including public intoxication; (2) Plaintiff's supervisor remarked in her personnel file that she "has had some activities that have brought into question her personal judgment as an officer"; (3) co-worker interviews were overwhelmingly negative, indicating poor working relationships and officer safety concerns; and (4) co-worker interviews, Plaintiff's polygraph, and the citizen complaint describe several incidents in which Plaintiff exercised poor judgment as a law enforcement officer.

Plaintiff disputes many of the allegations and contentions in the background investigation report, but there was no contemporaneous evidence from which Sheriff Harum could conclude that the report was unreliable.  Despite Plaintiff's assertions to the contrary, the polygraph reports are not inconsistent with the allegations contained in the background investigation report.  It would be

---

[5]  Plaintiff's counsel retracted this statement later in the proceedings.

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 15

1   inappropriate for this Court to consider information not available to Sheriff Harum

2   when assessing the propriety of his decision at the time it was made.  Plaintiff also

3   appears to argue that the review of background investigations of applicants to

4   transfer pursuant to statute, like Plaintiff, should differ qualitatively from the

5   review of background investigations of "normal" applicants.  She contends only

6   incidents and actions that would be terminable should disqualify a transfer or

7   absorption applicant from passing her background investigation.  There is no

8   indication in state laws or regulations that a different standard of review should

9   apply.  Furthermore, the fact that incidents and complaints had been addressed by

10  Plaintiff's former employer does not necessarily mean they should not be

11  considered by a potential future employer.  An incident may not rise to a level

12  requiring termination, but may raise sufficient concerns to justify a decision not to

13  extend an offer of employment.  Therefore, for the purposes of this matter, the

14  Court finds that a reasonable person reading the background investigation report

15  could conclude that Plaintiff failed the background check, or, in other words, that

16  she did not have the qualifications and "good moral character" required to become

17  a CCSO field deputy.

18          **A.**       **Violations of RCW §§ 41.14.250-41.14.270**

19        Sections 41.14.250 to 41.14.270 govern the transfer of employees from city

20  police departments to county sheriff's offices when a city contracts with a county

21  to provide law enforcement services.  As stated above, the Washington Supreme

22  Court considered these provisions in *Stone v. Chelan County Sheriff's Department*,

23  110 Wash.2d 806.  As stated in the LESA and in the Civil Service Rules, passing

24  the background investigation was a required qualification to become a field deputy

25  with CCSO.

26        Sheriff Harum decided that Plaintiff did not pass her background

27  investigation, and she was therefore not "eligible" under § 41.14.260 for transfer.

28  Although Plaintiff has raised questions and concerns as to the validity of his

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 16

1  decision and of the background investigation itself, the Court has found that the

2  background investigation is legitimate and that a reasonable person reading the

3  background investigation report and its addendum could conclude that Plaintiff

4  failed.  The Court declines to consider evidence not before Sheriff Harum at the

5  time he made his decision, for it is not this Court's duty to review what would

6  properly be before the Civil Service Commission.

7      It is also not within this Court's jurisdiction to conduct such a review.  The

8  Washington Supreme Court has explained that the "doctrine of exhaustion of

9  administrative remedies is well-established in Washington.  The rule provides that

10  '[i]n general an agency action cannot be challenged on review until all rights of

11  administrative appeal have been exhausted.'"  *S. Hollywood Hills Citizens Ass'n*

12  *for Preservation of Neighborhood Safety & Env't v. King County*, 101 Wash.2d 68,

13  73 (1984) (internal citation omitted).  The principle behind the exhaustion

14  requirement, "the belief that the judiciary should give proper deference to that

15  body possessing expertise in areas outside the conventional experience of

16  judges[,]" is well-illustrated here.  *Id*.  None of the exceptions to the exhaustion

17  requirement apply to Plaintiff's statutory claim.  *See id*. at 74 (listing three

18  exceptions to exhaustion in circumstances when (1) resort to administrative

19  procedures would be futile; (2) the party is challenging the constitutionality of the

20  agency's action or the agency itself; and (3) the aggrieved party has no notice of

21  the initial administrative decision or no opportunity to exercise the administrative

22  review procedures).

23      Because Plaintiff did not pass her background investigation, she was not

24  eligible for transfer under RCW § 41.14.260.  Therefore, Defendants did not

25  violate the Washington statutes governing the transfer of employees when a city

26  contracts with the county for the provision of law enforcement services, RCW §§

27  41.14.250-41.14.270.

28      **B.    Defamation Claim**

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 17

1   Plaintiff claims Defendants defamed her in their statements published in the
2   *Wenatchee World*.  To establish a *prima facie* case of defamation, Plaintiff must
3   establish four elements: falsity, an unprivileged communication, fault, and
4   damages.  *Herron v. KING Broadcasting Co.*, 109 Wash.2d 514, 521-22 (1987).
5   Falsity in a classic defamation case is a false statement, but it may also be
6   established where the defendant juxtaposes a series of facts or omits certain facts
7   so as to imply a defamatory connection or implication.  *Mohr*, 153 Wash.2d at 823.
8   This latter method of establishing falsity is known as "defamation by implication."
9   *Id*.  The claimant must show that the statement is "provably false, either in a false
10  statement or because it leaves a false impression."  *Id*. at 825.  On the same note, a
11  defamation defendant need not "'prove the literal truth of every claimed
12  defamatory statement.'"  *Id*. (quoting *Mark v. Seattle Times*, 96 Wash.2d 473, 494
13  (1981)).  Instead, "'[a] defendant need only show that the statement is substantially
14  true or that the gist of the story, the portion that carries the sting, is true.'" *Id*.
15  (quoting *Mark*, 96 Wash.2d at 494).

16  Here, Plaintiff claims the article in the *Wenatchee World* contains
17  defamatory statements.  The statements at issue are as follows: "Two other Chelan
18  police officers failed background checks required for employment, said sheriff's
19  office Sgt. Kent Sisson . . . .  Sisson would not say why the two officers, Kyle
20  Watson and Bonnie Stearns, were not hired, other than to say that they did not
21  meet standards set by the sheriff's office."  The statements attributed to Defendant
22  Sisson in this excerpt are true, and their "sting" is also true.  Plaintiff did not pass
23  the background investigation, and this meant she did not meet the standards set by
24  the sheriff's office.  Therefore, Plaintiff cannot establish the first element of the
25  *prima facie* case for defamation by a preponderance of the evidence.

26  **C.    Discrimination on the Basis of Gender**

27  Plaintiff's final claim is that Defendants discriminated against her on the
28  basis of her gender in their decision not to hire her as a CCSO field deputy, in

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 18

violation of RCW § 49.60.180.  Under Washington law, an employer cannot "discharge or bar any person from employment because of . . . sex[.]"  RCW § 49.60.180(2).  To recover, Plaintiff has the burden of proving by a preponderance of the evidence that her gender was a substantial factor in Defendants' decision not to hire her.  *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wash.2d 302, 309-10 (1995).  Plaintiff does not have to prove that her gender was the only factor or the main factor in the decision, or that Ms. Stearns-Groseclose would have been hired but for her gender.  *Id.*

The testimony and evidence presented by Plaintiff is not enough to meet her burden of showing that it was more likely than not that gender was a substantial factor in Defendants' decision not to hire her.  Plaintiff has presented some circumstantial evidence that gender could have been a factor in Sheriff Harum's decision.  This evidence is comprised mostly of the circumstances surrounding Sheriff Harum's decisions not to hire three female applicants for field deputy positions in the past.  Testimony from Eric Collier, Joe Herron, and Kim Roberts indicated that there very well could be a reluctance to hire women as field deputies. This is troubling to the Court.  However, these witnesses also admitted that the other female applicants, similar to Ms. Stearns-Groseclose, had substantial characteristics or factors that constituted legitimate reasons to decline an offer of employment.  Additionally, Sheriff Harum testified and other evidence supports the contention that the vast majority of applicants to become a CCSO field deputy are men, which could explain why Sheriff Harum has not hired any female field deputies during his tenure as sheriff.

Also troubling to the Court are Mr. Mann's alleged statements that Plaintiff would not be hired at CCSO before her background investigation was completed. However, assuming Mr. Mann made his comments about Plaintiff failing the background investigation, and even assuming these statements were endorsed by Sheriff Harum, the statements do not necessarily imply gender discrimination.  The

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 19

1   Court more easily could infer from these statements that Mr. Mann and possibly
2   Sheriff Harum had heard about Plaintiff's work relationships, poor judgment,
3   public intoxication, and/or her other issues from other sources, particularly
4   considering the small size of the community in which they all worked.

5       If Plaintiff's background investigation report were not so strongly negative,
6   the Court might infer that gender was a substantial factor in the decision not to hire
7   her. However, considering the nature of Plaintiff's background investigation
8   report, Plaintiff has not shown by a preponderance of the evidence that gender was
9   a substantial factor in Defendant's decision not to hire her. Based on the evidence
10  presented at trial, the Court finds that it is more likely than not that a
11  discriminatory motive was not a substantial factor in Defendants' decision not to
12  hire Plaintiff as a field deputy. Evidence presented instead supports a finding that
13  Plaintiff's background investigation report was the legitimate and major motivating
14  factor behind Sheriff Harum's decision.

15                              <u>**CONCLUSION**</u>

16      Losing a job one loves is always difficult, particularly when one feels as
17  though the reasons for the loss may preclude finding another job in the same field.
18  This situation is often the case in law enforcement, where extensive background
19  investigations and inquiries into reasons behind leaving one's former position are
20  justifiably routine. Nevertheless, a preponderance of the evidence does not support
21  any of Plaintiff's claims. Plaintiff has failed to show that Defendants violated
22  either her right to due process, the Washington statutes governing transfer of city
23  law enforcement employees to county sheriff's offices, or the Washington Law
24  Against Discrimination. Nor has she proved that Defendants defamed her
25  reputation.

26      As an applicant for a position with CCSO, Plaintiff received constitutionally
27  sufficient notice and an opportunity for hearing after Sheriff Harum decided she
28  failed her background investigation. Furthermore, Washington law requires more

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 20

than the evidence presented to sustain a claim of discrimination, defamation, or of violation of RCW §§ 41.14.250-41.14.270.

Accordingly, and for the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Plaintiff's claims are **DISMISSED** and judgment is granted in favor of Defendant.

2. The District Court Executive shall enter judgment in favor of the Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this 6th day of March, 2006.


s/ Robert H. Whaley

ROBERT H. WHALEY
Chief United States District Judge


Q:\CIVIL\2004\Stearns-Groseclose\ffcl.wpd

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 21